The City of Birmingham ("the City") has petitioned this court for a writ of certiorari, *Page 743 
see Ex parte Smith, 394 So.2d 45 (Ala.Civ.App. 1981), seeking review of a three-judge panel's reversal of its personnel board's decisions to suspend the employment of Gary Erwin, a police officer, for 30 and 45 days, based upon two separate instances of alleged misconduct. We affirm in part, reverse in part, and remand.
After an initial determination hearing, Erwin was suspended for 30 days by his department head on the following charges:
 "In that, on Friday, May 5, 2000, at approximately 11:05 a.m., [Erwin] approached Ms. Marie Ricker and placed [his] handcuffs on her and told her if she felt like getting in trouble to call [him]. Furthermore, [Erwin] failed [his] polygraph test concerning the allegations."
Erwin was subsequently suspended for an additional 45 days on the following charges:
 "In that, on Saturday, July 28, 2001, at approximately 2330 hours, [Erwin was] involved in a physical domestic altercation with [his] wife, Mrs. Kimberly Erwin. During this altercation, Mrs. Erwin received a black eye and bruises to her arms. Furthermore, [Erwin] failed to notify [his] immediate supervisor of this incident and [he was] arrested for Attempted Rape 1st Degree and Domestic Assault."
Erwin appealed his suspensions to the City's personnel board.
Although Erwin filed separate appeals, his appeals were consolidated and heard by a hearing officer appointed by the personnel board. The hearing officer entered a recommendation regarding the suspension based on Erwin's allegedly handcuffing Ricker that stated, in pertinent part:
"Findings of Fact
 "This Hearing Officer finds sufficient facts to sustain the charges made against [Erwin] and to support a conclusion that the disciplinary action of suspension of thirty (30) days taken by [the City] was appropriate in light of the entire record before this Hearing Officer.
 "[Erwin] did not deny that he came into contact with Ms. Ricker on May 5, 2000. [Erwin] only asserts that Ms. Ricker made up a story. However, [Erwin] at no time told the IAD [Internal Affairs Division] that he did not have a handcuff key or that he only gave Ms. Ricker a business card.[1] *Page 744 
 "In the judgment of this Hearing Officer the testimony of Ms. Ricker is [credible] and believable. This Hearing Officer finds that the [credibility] and believability of Ms. Ricker's testimony is bolstered by her clear remembrance of [Erwin's] badge number and name.
 "The results of subsequent polygraph examinations given both to [Erwin] and Ms. Ricker support the conclusion that Ms. Ricker is to be believed in her testimony and that [Erwin] is not to be believed with respect to the incident with Ms. Ricker. No evidence exist[s] that [Erwin] ever objected to taking a polygraph examination at the time it was given.
". . . .
"Findings of Law
 "This Hearing Officer finds that while the performance of [Erwin] on the polygraph test might not be legal evidence, this Hearing Officer is not bound by the technical rules of evidence. See Ex parte Morris, 263 Ala. 664[, 83 So.2d 717 (1955)]. In addition, [the City's] Rules and Regulations required [Erwin] to submit to a polygraph exam and [Erwin] submitted to the polygraph examination without objection being noted in the record before this Hearing Officer. When an employee challenges his discipline he `opens the door' to proof of `negative' polygraph results that have properly been considered by [the City] under the Rules and Regulations of employment. It is not disputed that the terms of [Erwin's] employment with [the City] provided that the results of a polygraph test could be considered by [the City] in connection with employer/employee matters. See Ex parte Bostick
. . ., 642 So.2d 472 ([Ala.] 1994).
". . . .
"Recommendation
 "It is the recommendation of this Hearing Officer that the Board find that the disciplinary action of suspension for thirty (30) days for violation of the rules and regulations of both the Board and [the City] is supported by the facts and findings of this Hearing Officer."
The hearing officer also entered a recommendation on the suspension based on Erwin's allegedly committing an act of domestic violence and his subsequent arrest as a result of that incident that stated, in pertinent part:
"Findings of Fact
 "The Hearing Officer finds sufficient facts to sustain the charges made against [Erwin] and to support a conclusion that the disciplinary action of suspension of forty-five (45) days taken by [the City] was appropriate in light of the entire record before this Hearing Officer.
 "While it is noted that [Erwin's] wife . . . did not testify before this Hearing Officer, [her] statements made prior to dismissal of the charges, including her signed statement given to the Fultondale Police Department during the early morning of July 29, 2001; her taped testimony given to IAD [Internal Affairs Division] on August 2, 2001; and the unsigned transcript of those tapes, are all in evidence as statements made by her contemporaneously with the incident. This Hearing Officer has reviewed this evidence and finds it to be in direct conflict with the evidence offered by [Erwin] at the [h]earing with respect to the events occurring the late evening of July 28, 2001.
 "It should also be noted, that while [Erwin's wife] dropped all charges against [him], she has never withdrawn or retracted her statements made *Page 745 
regarding the incident. Mrs. Erwin's decision to dismiss the charges does not serve to retract her statements that [Erwin] physically abused her or attempted to have sex with her against her will. Absent testimony from [Erwin's wife] that her statements made at the time were incorrect or false, this Hearing Officer must conclude that those statements represent [her] account of the events of July 28, 2001.
 "In addition, the photographs of [Erwin's wife] taken subsequent to the incident support [her] allegation that she was physically abused. At the time of the incident, she stated in her signed statement that her husband . . . had abused her and attempted to rape her. In addition, Officer Marquard, who observed [Erwin's wife's] injuries and interviewed her within two days of the incident, testified that [she] told him that [Erwin] caused those injuries. This evidence provides additional credibility to the allegations of physical abuse and sexual misconduct made by [Erwin's wife].
 "[Erwin's] testimony places him at his wife's house at the time of the occurrence complained of by his wife. [Erwin] denies that he abused or sexually assaulted his wife, but he did not tell IAD during either of his interviews that his wife was lying or that the allegations were false. The evidence that [Erwin] received two calls from [his wife] after he had left her house is inconclusive to support [Erwin's] version of the events of the early morning of July 29, 2001. One call came at 12:10 a.m., one minute prior to [his wife] calling the Fultondale Police Department (which occurred at 12:11 a.m.) the second call came at 12:12 a.m., one minute after [she] reported the incident, but before the police arrived at 12:14 a.m. However, [Erwin] testified that nothing was said during either conversation.
 "Additionally, [Erwin] did not know of the allegations made by his wife because he was attending a DARE convention in Los Angeles. [Erwin] only found out about the charges when he was arrested upon his arrival at the Birmingham Airport. His immediate supervisor was present at the time. Therefore, [Erwin] could no have known that charges were being brought against him, so that he could notify his superiors. [Erwin] testified that nothing occurred during the evening of July 28, 2001[,] which would require that he notify his superiors.
". . . .
"Findings of Law
 "This Hearing Officer made no findings of law with respect to this case.
". . . .
"Recommendation
 "It is the recommendation of this Hearing Officer that the Board find that the disciplinary action of suspension of forty-five (45) days for violation of the rules and regulations of both the Board and [the City] is supported by the facts before this Hearing Officer."
The City's personnel board accepted the hearing officer's recommendations and upheld both suspensions.
Erwin filed a notice of appeal to the trial court for review by a three-judge panel pursuant to the personnel board's enabling act. The three-judge panel conducted a hearing on the appeal and issued an order reversing the personnel board's decision and setting aside Erwin's suspensions; its order stated, in pertinent part:
 "In [regard to the alleged handcuffing incident,] there was no complaint by Ms. Ricker, rather an investigation was *Page 746 
instigated by her father, an employee of councilman Jimmy Blake. This suspension was not based on a failure to take a polygraph test, rather it was based on a subjective assessment of the comparative reliability of two separate tests. This panel find the inherent unreliability of the polygraph test make[s] this punishment, in this context, and on this evidence to be unsupported by substantial and legal evidence.
 "In [regard to the alleged domestic-violence incident,] [O]fficer Erwin's wife did not appear, nor did she prosecute. Rather, the hearing officer's decision was based on hearsay statements which also clearly and without waiver violate the spousal privilege. There was no other evidence which could be categorized as `substantial' or `legal.'"
The City filed a petition for the writ of certiorari with this court.
On appeal, the City argues that the trial court erred by setting aside Erwin's suspensions because, it says, (1) the technical rules of evidence do not apply to the personnel board in an appeal of a disciplinary action; (2) in the employment context in which Erwin's employer, the Birmingham Police Department, subjected Erwin to a polygraph test, the trial court improperly discounted the results of that test as evidence; and (3) there was substantial evidence to support the personnel board's decision to uphold Erwin's suspensions.
This court has set out the applicable standard of review as follows:
 "At the outset, we note that the Board's decision must be affirmed if substantial evidence supports it. City of Birmingham v. Personnel Board of Jefferson County, 464 So.2d 100 (Ala.Civ.App. 1984). Both the trial panel and this court are bound by the same substantial evidence standard of review. City of Birmingham, supra. Substantial evidence is relevant evidence that a reasonable mind would view as sufficient to support the determination. Ex parte Morris, 263 Ala. 664, 83 So.2d 717 (1955)."
Ex parte Personnel Bd. of Jefferson County, 648 So.2d 593, 594
(Ala.Civ.App. 1994) ("Personnel Board II"). Further, this court has noted:
 "The determination of the weight and credibility of the evidence presented is solely within the province of the Board; the review here is limited to the proper application of the relevant law and whether the Board's ruling is supported by any legal evidence."
Ex parte Personnel Bd. of Jefferson County, 440 So.2d 1106, 1109
(Ala.Civ.App. 1983) ("Personnel Board I").
The City first contends that the trial court erred by reversing the personnel board's decision because, it says, the personnel board was not bound by the technical rules of evidence in making its decision, citingEx parte Morris, 263 Ala. 664, 83 So.2d 717 (1955). In Morris, our supreme court stated:
 "Petitioner next contends that his rights have been substantially and materially prejudiced by the Board taking testimony of an alleged expert concerning his findings from [p]olygraph tests performed on petitioner. We think the circuit court adequately answered this argument when it found that while the testimony might not be legal evidence, its admission was not reversible error because the Board is not bound by technical rules of evidence. In the absence of statutory provisions, the Board has seen fit to adopt its own rules, one of which specifically applies to evidence, viz., Rule No. X, subsec. 10.5:
 "'. . . The Board shall not be bound by the technical rules of evidence but *Page 747 
shall seek diligently all of the information and evidence bearing on the case.'[2]
 "The adoption of such rules was within the prerogative of the Board. 42 Am.Jur., § 129, p. 460.
 "Moreover, since the Board is not composed of those learned in the law, we are unwilling to reverse because of indiscretion in admitting some illegal evidence. This view conforms to our holding as to a somewhat similar quasi-judicial body, the Public Service Commission, in North Alabama Motor Express v. Rookis, 244 Ala. 137, 12 So.2d 183 [(1943)]."
263 Ala. at 667, 83 So.2d at 719-20.
Accordingly, we agree with the City's contention that the personnel board was not bound by the technical rules of evidence. However, our supreme court has recognized an exception to this general rule that will have application to the resolution of this appeal. In North Alabama MotorExpress, Inc. v. Rookis, 244 Ala. 137, 12 So.2d 183 (1943), cited inMorris, our supreme court further noted:
 "'There must be some evidence which is competent and legal, as treated by the usual rules for the producing evidence in any legal proceeding to sustain the finding. If founded only on hearsay or other improper evidence, the decision will not be sustained.' 42 Am.Jur. 652 et seq., Section 128; see, also, p. 468, Section 122."
244 Ala. at 140, 12 So.2d at 186 (emphasis added). Mindful of these principles of law, we can summarily address whether the trial court properly reversed the personnel board's decisions.
The hearing officer's findings concerning the alleged handcuffing incident were based not only on the results of the polygraph tests performed on Erwin and Ricker, but also on their live testimony and the testimony of other witnesses. The hearing officer found that Ricker's testimony was more credible and believable than that of Erwin; that finding was further supported by the polygraph test results. This credibility determination and the weight to be accorded the testimony presented was solely within the province of the hearing officer. PersonnelBoard I, supra. Thus, we conclude that the hearing officer's findings and his recommendation to suspend Erwin for the handcuffing incident were supported by substantial evidence and that the trial court's judgment is due to be reversed as to this issue. Personnel Board II, supra.
As to the alleged domestic-violence incident, our review of the evidence relied upon by the hearing officer leads us to the same conclusion reached by the trial court — that the evidence relied upon by the hearing officer was primarily hearsay, as defined by Rule 801, Ala. R. Evid.; such evidence cannot sustain the hearing officer's findings and recommendation. North Alabama Motor Express, supra. Therefore, the trial court's reversal of Erwin's suspension for this alleged incident is due to be affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] The hearing officer's recommendation stated, in pertinent part, that Erwin testified as follows:
 "[Erwin] stated that he was not carrying a handcuff key on May 5, 2000. [Erwin had testified that he no longer carried a key after he had a complaint filed against him by an individual he had handcuffed.] [Erwin] further testified that prior to May, 2000[,] he had previously been to Barrett Elementary School on several occasions and that children always asked to see the equipment which he carried on his belt, including his handcuffs. [Erwin] testified that he and his partner . . . would generally handcuff someone in class and that [his partner] would always remove the handcuffs with his key because [he] did not carry a key.
 "[Erwin] testified that he remembered May 5, 2000[,] very well. . . . [Erwin] testified that as he drove past the [s]chool he saw [Ricker], who he had never seen before, in her car pulling away from the [s]chool with her window down. [Erwin] approached her and asked if they were having Career Day at the [s]chool because he had not seen any cars around back. [Erwin] testified that [Ricker] said `yes' they were . . .; that she worked with children; and that Career Day was being held in the gym. [Erwin] testified that he discussed with [Ricker] what he did to work with children and that he handed her his business card in case she wanted [him] to help out with her children. . . ."
[2] This is now Rule 12.6(d) of the personnel board's rules; Rule 12.6(d) states that "[n]either the Board, nor any Hearing Officer acting on its behalf, shall be bound to technical rules of evidence but shall diligently seek all of the information and evidence bearing on the merits of the case." *Page 748